***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission hereby affirms in part, and reverses in part, the Opinion and Award as modified below.
 EVIDENTIARY MATTERS
At the deputy commissioner hearing, plaintiff submitted the following exhibits: a letter of resignation dated 16 April 2000, which was admitted into the record and marked as Plaintiff's Exhibit (1); an Affidavit From Plaintiff, which was admitted into the record and marked as Plaintiff's Exhibit (2); and correspondence from the North Carolina Board of Nursing dated 25 October 2000, which was admitted into the record and marked as Plaintiff's Exhibit (3).
Subsequent to the hearing, over plaintiff's objection, a certified copy of a Judgment relating to criminal charges against plaintiff was marked as Defendants' Exhibit (1), and admitted into the record on the sole issue of plaintiff's credibility regarding her ongoing disability. However, defendants, in the opinion of the deputy commissioner, went beyond that at the hearing and attempted to introduce evidence relating to plaintiff's use of prescription medications as a character issue. Due to the perceived irrelevancy of such evidence or such an inquiry by the deputy commissioner, plaintiff's objections were sustained and that line of inquiry was not permitted by the deputy commissioner. The Full Commission has accepted the evidence admitted by the deputy commissioner and has evaluated the admitted evidence in determining the competency of the evidence and the weight that it should be given as expressed in the findings of facts recited below. Although not necessary to the decision in this case, the Full Commission finds that the deputy commissioner should have allowed defendants to fully impeach the credibility of the plaintiff and to allow a full record to come to the Full Commission. Because the Full Commission has found that plaintiff's testimony was successfully impeached, it finds no harmful or reversible error in the acts of the deputy commissioner and no further need to receive additional evidence concerning plaintiff's credibility, or lack thereof.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, which were admitted into the record and marked as Stipulated Exhibit (1), at the deputy commissioner hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer on all relevant dates herein, including 6 June 1999 and 27 December 1999. [The pre-trial agreement reflects that an employer-employee relationship also existed on 30 June 2000, 21 October 2000 and 8 January 2001; however, the Full Commission finds that this stipulation was subsequently withdrawn with the admission of Plaintiff's Exhibit 1 and testimony that plaintiff resigned from her employment with defendant-employer effective 1 May 2000.]
3. The average weekly wage of plaintiff at the time in question was to be determined by the filing of an Industrial Commission Form 22, Statement of Days Worked and Earnings of Injured Employee.
4. Defendant-employer provided workers' compensation insurance coverage to its employees through EBI Companies at all relevant dates herein.
5. Plaintiff sustained a compensable injury by accident to her back on 6 June 1999, which is the subject of I.C. No. 958925, and a compensable injury by accident to her back on 27 December 1999, which is the subject of I.C. No. 042073.
6. Plaintiff last worked for defendant-employer on 2 March 2000.
7. Plaintiff has received ongoing total disability compensation benefits in rate of $515.14 per week from 9 March 2000 through 26 April 2000, and from 16 May 2000 through the present.
8. The issues to be resolved before the deputy commissioner were:
 a. Whether plaintiff sustained an injury by accident to her right knee arising out of and in the course of her employment on or about 30 June 2000;
 b. Whether plaintiff sustained a compensable injury by accident to her left wrist arising out of and in the course of her employment on 21 October 2000;
 c. Whether plaintiff sustained compensable injuries by accident arising out of and in the course of her employment on 8 January 2001;
 d. Whether plaintiff is entitled to additional medical treatment from Dr. T. Craig Derian for the compensable injury to her back of 27 December 1999;
 e. Whether plaintiff is entitled to medical treatment for the injuries to her right knee and left wrist;
 f. Whether plaintiff is entitled to permanent partial disability benefits for any ratings assigned by her physicians;
 g. Whether plaintiff is entitled to reimbursement of her mileage for medical treatment and out-of-pocket expenses for prescription medications as submitted to defendants on Industrial Commission Forms 25P and 25T, and;
 h. Whether plaintiff is entitled to workers' compensation benefits subsequent to 6 July 2000 and if so, in what amounts.
9. At the hearing, the parties submitted a notebook containing medical records, Industrial Commission Forms and other relevant documents, which was admitted into the record and marked as Stipulated Exhibit (2). Subsequent to the hearing, Stipulated Exhibit (2) was supplemented with the following: (a) three pages of medical records from Dr. George Miller, numbered pages 128.1-128.3; (b) seven pages of medical records from Pitt County Memorial Hospital, numbered pages 380.1-380.7; (c) six pages of medical records from Pamlico Orthopaedic Associates, numbered pages 128.4-128.9; (d) four pages of medical records from Dr. Craig Derian, numbered pages 29.1-29.4; and (e) a certified correspondence from the North Carolina Board of Nursing, numbered page 413.
 ***********
Based upon the competent evidence of record and the reasonable inferences drawn therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was a forty-three year-old female who had been employed by defendant-employer as a Registered Nurse since August 1997.
2. On 6 June 1999, plaintiff sustained an admittedly compensable injury by accident in the form of a T12 fracture. This injury occurred as plaintiff was attempting to catch a patient from behind who was slipping on the floor, causing her to fall and injure her back. This injury by accident is the subject of I.C. File No. 958925.
3. Subsequent her 6 June 1999 injury by accident, plaintiff initially received treatment in the Emergency Department at Martin General Hospital. At the hospital, plaintiff was given Tylenol and Valium for her pain and was advised to follow up with her primary physician, Dr. George J. Miller, who eventually diagnosed a T12 fracture. Dr. Miller prescribed Ultram and Flexeril for pain and plaintiff continued to work.
4. On 24 September 1999, plaintiff returned to Dr. Miller who determined that the T12 compression fracture was healing well. Dr. Miller refilled plaintiff's Ultram prescription and plaintiff continued to work full time, regular duty.
5. Dr. Miller found plaintiff reached maximum medical improvement for this condition and assigned a two percent (2%) permanent partial disability rating to plaintiff's whole person as a result of the T12 fracture. Dr. Craig T. Derian has assigned a five percent (5%) rating to plaintiff's back as a result of the fracture. Considering that Dr. Miller's rating was to the whole person and Dr. Derian's rating was to the spine, the Commission finds that there is not a substantial difference between the ratings of the two doctors when the whole body impairment is converted to a spine impairment [under AMA Guidelines], and thereby finds that the greater weight of the competent medical evidence is that plaintiff reached maximum medical improvement for her T-12 fracture and that she has a 5% impairment rating to the spine for the June 1996 back injury.
6. On 27 December 1999, plaintiff sustained a second admittedly compensable injury by accident as she was assisting a patient back to his bed when the patient slipped and fell against her, causing plaintiff to hit her back on a metal bathroom door jamb. This incident is the subject of I.C. File No. 042073. As the result of this injury by accident, plaintiff experienced the immediate onset of pain in her back that radiated into her right leg and buttocks.
7. Following her 27 December 1999 injury by accident, plaintiff initially received treatment for her injury in the Emergency Department of Martin General Hospital. Plaintiff was diagnosed with a thoracic back strain and was again prescribed medications, including Diclofenac, Dolobid and Flexeril. Additionally, plaintiff was instructed to use a heating pad, limit her lifting no more than ten (10) pounds and to follow up with Dr. Miller.
8. Dr. Miller examined plaintiff on 29 December 1999, and at that time, plaintiff was experiencing mid-back pain which was radiating down her right leg. Dr. Miller noted tenderness from the mid-thoracic spine down into the lumbar spine. Dr. Miller recommended a MRI evaluation and prescribed Ultram, Skelaxin, and Mepergan Forte. Plaintiff was also given a prescription for injections of Demerol and Phenergan that she received at Martin General Hospital.
9. Due to continued symptoms, an MRI of plaintiff's lumbar spine was performed on 17 February 2000. The MRI indicated bulging disks at the L3-L4, L4-L5, and L5-S1 levels and a mild compression deformity of the T12 vertebral body that was consistent with plaintiff's June 1999 injury. The MRI did not reveal a herniated disk or other surgical condition.
10. Plaintiff was next examined by Dr. Miller on 2 March 2000. At that time, plaintiff continued to experience pain in her lower back and buttocks. It was Dr. Miller's opinion that plaintiff had pre-existing osteoporosis and that she was performing more work than her weakened back could withstand and removed her from work for six to eight weeks. Dr. Miller believed that plaintiff was taking excessive medication in order to continue to work. Dr. Miller advised plaintiff that she did not have a herniated disk and that she did not require spinal surgery. Plaintiff was also prescribed Ultram, Mepergan Forte, Skelaxin, and Celebrex and underwent three epidural steroid injections between 9 March 2000 and 21 March 2000.
11. Following this course of treatment, plaintiff's condition improved significantly, and Dr. Miller referred her to physical therapy. On 14 April 2000, plaintiff was advised to return to work on 1 May 2000 and to have two weeks of physical therapy to increase her strength in the interim. Dr. Miller scheduled plaintiff to return to see him after she had returned to work, full duty, for two weeks. Although plaintiff contends that her condition worsened from physical therapy and suggests that she could not return to work on 1 May 2000, the Full Commission does not accept this testimony to be credible and notes that plaintiff did not return to Dr. Miller or any other physician on or before 1 May 2000, to complain about the physical therapy and seek permission from a medical professional to continue in an off work, light duty, or other status that would have excused her return to work on or about 1 May 2000.
12. On 16 April 2000, plaintiff authored a letter of resignation to defendant-employer indicating that she has resigned from her employment effective 1 May 2000.
13. On 20 April 2000 plaintiff was criminally indicted for attempting to obtain a controlled substance (Valium) by fraudulent prescription.
14. Contrary to plaintiff's assertion that she was not able to work, plaintiff sought employment with Perdue Farms. When plaintiff believed that she was to be employed as an occupational nurse for Perdue Farms, plaintiff resigned her position with defendant-employer. Plaintiff, however, was soon thereafter notified by Perdue that she would not be hired. There is conflicting testimony as to why plaintiff did not work for Perdue Farms. Defendants offered evidence suggesting that it was because plaintiff was charged with criminal complaint for seeking to obtain a controlled substance by false prescription and the timing of the resignation letter, criminal indictment, and subsequent denial of employment by Perdue Farms makes this argument plausible. Plaintiff suggested that she was not employed by Perdue Farms because of continuing work restrictions, however, there was no evidence that plaintiff was released to work with restrictions and this reason is not accepted as credible. No evidence was presented from Perdue Farms, or any other witness with first hand knowledge (not hearsay) as to the reason why Perdue Farms did not hire plaintiff; therefore, the Full Commission finds that it cannot determine why plaintiff was not so employed. Because plaintiff was not ultimately offered the position at Perdue Farms, the Full Commission finds that plaintiff's failure to go forward with this employment does not constitute a refusal of suitable employment since the employment was not ultimately available to plaintiff.
15. Plaintiff, however, did not report to work for defendant-employer in accordance with the release from Dr. Miller and did not seek to rescind her resignation when she found that she would not be employed by Perdue Farms. Competent evidence was offered by defendant-employer that it had work available that it could have offered to plaintiff had she not resigned and if she did not have criminal charges pending against her. Based on the greater weight of the evidence, the Full Commission finds that, if plaintiff had reported to work on 1 May 2000, defendant-employer would have had work available for plaintiff and that plaintiff's resignation and refusal to report to work was a voluntary refusal of suitable employment. The Full Commission further finds that it was the policy of defendant-employer to suspend an employee when facing criminal charges. The plaintiff was under indictment for seeking a controlled substance by false prescription before 1 May 2000 and subsequently was found guilty of this charge, and the Full Commission finds that said act further constitutes refusal of suitable employment with defendant-employer. There is no competent evidence that the criminal indictment arose from plaintiff's compensable injuries. The Full Commission, therefore, finds that had plaintiff reported to work for defendant-employer, that she would have been placed on suspension in accordance with defendant's policy that applied equally to its employees and was not based on plaintiff's injuries. Plaintiff would have been physically able to return to work for defendant-employer and defendant-employer would have had suitable work available for plaintiff absent her resignation and/or criminal charges.
16. Plaintiff did not return to Dr. Miller, as scheduled, following her 1 May 2000 release to return to work. Plaintiff, however, was examined by Dr. Scot E. Reeg on 16 May 2000 with complaints of inter-scapular and lower back pain with increasing pain down her right leg. Dr. Reeg was not able to detect any neurological deficits. At plaintiff's request, Dr. Reeg took plaintiff off from work, recommended a myelogram, and continued her on Ultram. Plaintiff underwent a lumbar myelogram on 28 June 2000 which revealed no significant epidural defects or other significant abnormality.
17. Plaintiff returned to Dr. Reeg on 6 July 2000 with complaints of continued low back pain, accompanied by numbness down her right leg. The myelogram did not reveal any stenosing (narrowing) lesions. Further, examination did not demonstrate obvious weakness in the lower extremity. Dr. Reeg did not believe surgery was warranted and opined that plaintiff had reached maximum medical improvement with a two percent (2%) permanent partial disability rating to her back. Dr. Reeg released plaintiff to return to sedentary or light-duty work and opined that she would be never be able to return to her former duties as a ward nurse, but could do lighter nursing duties.
18. Again, plaintiff did not return to work for defendant-employer, and the Full Commission finds that defendant-employer had sedentary and light duty work available and could have made employment available for plaintiff had she requested employment in accordance with the doctor's release, subject to suspension for the pending criminal charges. Plaintiff, however, did not report to work, and thereby continued to refuse suitable employment.
19. On 30 June 2000, plaintiff sustained an injury to her right knee when her right leg buckled, causing her to fall. This injury occurred at her home. Although plaintiff contends that this injury arises from her back injury made the basis of I.C. File No. 042073, plaintiff filed a new claim for this injury and it was assigned I.C. File No. 051886. Plaintiff was initially treated for this injury at the Emergency Department at Martin General Hospital with moderate dull, throbbing pain and tenderness in the right knee area. Plaintiff was diagnosed with a right knee sprain, received an Ace bandage and was discharged with prescriptions for Mepergan Forte and Ultram. Dr. Miller testified that plaintiff's right leg could have given away from the back injury that she sustained in December 1999 and found that plaintiff had reached maximum medical improvement for the right knee injury with a 0% impairment rating for this injury. Although this claim was assigned a new Industrial Commission claim number it is not a new and separate workers' compensation claim. The right knee injury is not a new injury sustained in the course and scope of plaintiff's employment, but, is a continuation of and arises from plaintiff's December 1999 claim for the injury to her back. Thus, all benefits for the 30 June 2000 right knee injury are compensable under plaintiff's December 1999 workers compensation claim (I.C. No. 042073). This claim did not require a new claim number.
20. On 21 October 2000, plaintiff sustained an injury to her left wrist when her left leg again buckled as she was walking down steps. Although plaintiff contends that this injury arises from her back injury made the basis of I.C. File No. 042073, plaintiff filed a new claim for this injury, which was assigned I.C. File No. 103438. Plaintiff initially received treatment for this injury at the Emergency Department of Beaufort County Hospital, where she had symptoms of pain, swelling and bruising in the left wrist and hand with diminished range of motion in the left wrist. An x-ray revealed a fracture of the distal radius. Plaintiff was given a splint and a sling, and was discharged with prescriptions for Ultram and Vioxx following inpatient injections of Demerol and Phenergan.
21. Plaintiff was then examined by Dr. Miller on 24 October 2000. On that date, a closed reduction procedure was performed on her wrist, her arm was placed in a cast and she was prescribed Darvocet. When the cast was removed, plaintiff experienced loss of flexion and range of motion and an x-ray revealed a mild collapse of the distal radius and an ulnar neutral deformity. Dr. Miller testified that plaintiff reported to him that this injury occurred when her left leg gave away. Dr. Miller had no prior history of plaintiff having problems with her left lower extremity, in contrast to prior history for problems in the right lower extremity from the compensable December 1999 injury. Plaintiff testified at the deputy commissioner's hearing that her right leg gave away causing her to fall. The Full Commission does not accept plaintiff's testimony as credible because it is contrary to her medical records and the testimony of Dr. Miller. Therefore, based on the greater weight of the competent evidence, the Full Commission finds that the 21 October 2000 injury to the left wrist is not compensable as a new injury because it did not occur in the course and scope of employment. Further this injury is not an extension of the December 1999 back injury because Dr. Miller stated that plaintiff reported that she fell when her left leg gave away and that plaintiff did not have a history of left lower extremity problems from her December 1999 back injury.
22. On 14 December 2000, plaintiff was examined by Dr. T. Craig Derian of Durham, North Carolina. Contrary to the findings of the radiologists and Dr. Reeg, Dr. Derian read plaintiff's June 28, 2000 radiology studies to find L5-S1 bulging with posterior annular tear and lateral recess stenosis with some displacement of the thecal sac. Dr. Derian recommended surgical intervention consisting of a L5-S1 decompression, stabilization, and fusion. Dr. Derian opined to a reasonable degree of medical certainty that the episodes where plaintiff's right leg gave way on 30 June and 21 October 2000 were causally related to her admittedly compensable 27 December 1999 injury by accident. Dr. Derian was not aware that plaintiff had previously advised Dr. Miller that the 21 October 2001 injury occurred when her left leg gave away and that she had not previously experienced left lower extremity problems. The Full Commission, therefore, does not accept Dr. Derian's opinion concerning the causation of the October 2000 wrist injury to be competent evidence. Dr. Derian also was not aware that plaintiff had osteoporosis which would be a contraindication for the contemplated fusion surgery and that bone density testing and history revealed that plaintiff's osteoporosis was so severe that Dr. Miller explained coughing could and did produce compression fractures in plaintiff's thoracic and/or lumbar spine.
23. On 8 January 2001, plaintiff sustained multiple injuries as the result of a motor vehicle accident that occurred when she was driving to an Industrial Commission ordered mediation. Plaintiff contends that this injury arose out of her compensation claim(s) and should be compensable just as an injury in the course of her medical treatment would be compensable. The accident occurred while plaintiff was driving on public highways and occurred when plaintiff swerved her vehicle to avoid hitting a deer. As a result of the single vehicle accident, plaintiff was ejected from her vehicle and sustained significant injuries. Following initial treatment at Martin General Hospital, plaintiff was transferred by helicopter to Pitt County Memorial Hospital. Examinations revealed that plaintiff had sustained a T1 fracture, left rib fractures, a C6-C7 right pedicle fracture, a C1 fracture, a right fibula fracture, right rib fractures, L2-L4 fractures, a grade-one liver laceration, a scalp laceration, and bruises. As the result of the injuries she sustained on 8 January 2001, plaintiff underwent a C6-C7 anterior cervical disketomy and fusion procedure performed by Dr. F. Douglas Jones on 16 January 2001.
24. Following a period of recovery, plaintiff was discharged from the hospital on 27 January 2001. On 2 February 2001, plaintiff underwent a follow up examination performed by Dr. Deanna Boyette, who opined that plaintiff should remain in an air cast, ordered a four-prong cane to assist with weight bearing, and prescribed Dilaudid.
25. The Full Commission finds that there is no competent evidence that plaintiff's compensable injuries caused the 8 January 2001 single vehicle accident. Further, the injury did not occur in the course of medical care and did not arise from plaintiff's medical care. In addition, there is no evidence that defendant-employer paid for plaintiff's travel or that her employment, which ceased when she resigned on 1 May 2000, would compensate plaintiff for this travel or for her time traveling to the mediation. Rather, the Commission finds that plaintiff was traveling on public roads; that although plaintiff was traveling to a mediation in her workers' compensation claim, plaintiff had the right to choose the date and time of the proceeding, the methods and means of her travel to this appointment; and that the single vehicle accident and plaintiff's resulting injuries arose from the risk of injury to which the general public is equally exposed, did not arise out of or in the course of her employment, and is not a consequence of her compensable injury. Therefore, the Commission finds that the injuries sustained in the January 2001 automobile accident are not compensable.
26. On 17 January 2001, former Special Deputy Commissioner Gina Cammarano filed an Order for plaintiff to return to Dr. Miller and Dr. Reeg to obtain their opinions regarding Dr. Derian's surgical recommendation. Due to her auto accident on 8 January 2001, plaintiff's failure to timely comply with that Order is reasonably excused.
27. Dr. Reeg examined plaintiff and expressed that he did not agree with the recommendation of spinal surgery for plaintiff. Dr. Reeg noted that plaintiff's symptoms are beyond the complaints that would be attributable to her L5-S1 condition and that the diagnostic tests and his examinations did not and do not support spinal surgery. Dr. Reeg expressed that he stood by his prior finding that plaintiff reached MMI on 6 July 2000 with a 2% impairment rating for her December 1999 back injury.
28. Dr. Miller saw plaintiff in July 2001 and noted that there was a disagreement between Dr. Reeg and Dr. Derian regarding the benefit of spinal surgery. Dr. Miller choose to not become involved in the fray and deferred to these physicians concerning their opinions on future treatment.
29. As of August 2001, Dr. Derian continues to recommend L5-S1 spinal surgery consisting of fusion with instrumentation.
30. On the issues of extent of injury and need for spinal surgery, the Full Commission places greater weight with the opinion of Dr. Reeg than the opinion of Dr. Derian. On 17 February 2000 plaintiff had an MRI which failed to reveal a surgical lesion or other significant pathology; the bulging disks were consistent with plaintiff's age. On June 28, 2000, plaintiff had a myelogram, followed by an enhanced CT Scan, and flexion-extension films. The Full Commission notes that these films were negative for significant pathology. In particular, there was normal filling of lumbar nerve root sleeves, no significant epidural defects, conus within normal limits, no disc herniation, no spinal stenosis, only slight facet arthrosis, no evidence of instability, and no abnormality of mobility. Dr. Reeg agreed that these studies, together with his physical examination of plaintiff, did not support spinal surgery and that plaintiff's complaints were not anatomically correct and were exaggerated. In contrast to the reports of the radiologists and Dr. Reeg, Dr. Derian found that the June 2000 radiology studies showed bulging at L5-S1, an annular tear, stenosis, and displacement of the thecal sac. Dr. Derian on his first examination of plaintiff jumped to the conclusion that she needed spinal surgery and that the procedure should consist of spinal fusion with instrumentation. Dr. Derian in rendering his opinion was not aware that plaintiff suffered from osteoporosis which is a contraindication for fusion surgery because it indicates that the fusion would not be successful in the diseased bones. Although Dr. Derian was subsequently provided by counsel with medical confirmation of plaintiff's osteoporosis and acknowledges that this condition renders the success of fusion surgery to be unlikely, Dr. Derian has not changed his recommendation for spinal fusion surgery. Based on these factors, together with the fact that Dr. Reeg had the ability to examine the plaintiff closer to the time of injury, was involved with her care for a greater period of time, and did not change his opinion despite the subsequent, contrary conclusions of Dr. Derian, the Full Commission gives greater weight to the evidence from Dr. Reeg and finds that plaintiff reached maximum medical improvement for her December 1999 back injury on 6 July 2000 with a 2% impairment rating. The Commission further finds, in accordance with Dr. Reeg's opinion and the June 2000 radiology studies, that plaintiff currently is not a candidate for spinal surgery for her December 1999 back injury. The Commission finds that the recommendations of Dr. Derian are contraindicated in an osteoporitic patient without confirmed mechanical problems of the spine.
31. Based on the foregoing findings, the Full Commission disapproves of the deputy commissioner's finding that Dr. Derian be authorized as plaintiff's treating physician. The Full Commission finds that not only is Dr. Derian's opinion contrary to the greater weight of the medical evidence, his office is in Durham, North Carolina, which is a significant distance from plaintiff's residence and is not a convenient location for her care. The Full Commission finds that Dr. Miller and Dr. Reeg have provided reasonable care for plaintiff's injury, their care is consistent with the medical and diagnostic tests, and they are geographically closer to plaintiff's residence. The Full Commission, therefore, finds that Dr. Miller and Dr. Reeg shall continue as plaintiff's authorized treating physicians.
32. During the period since her initial injury by accident on 6 June 1999, plaintiff has continuously been prescribed medications by her treating physicians. At the hearing, defendants asserted that plaintiff has been abusing her prescription medications due to a drug addiction, and submitted Defendants' Exhibit (1) subsequent to deputy commissioner hearing to support this assertion. Stipulated medical records do reflect that Dr. Miller has expressed concern on more than one occasion that plaintiff was overusing her prescription medications. Those records further reflect that Dr. Miller was concerned that plaintiff's use of prescription medications may adversely affect her ability to work. The stipulated medical records also reflect that Dr. Reeg did not want to take responsibility for plaintiff's pain medications and suggest that he had concern that plaintiff was abusing pain medications. The indictment and subsequent conviction for seeking a controlled substance by false prescription also supports the conclusion that plaintiff may have been seeking and taking medication in excess of the amounts commensurate with her injuries.
33. In plaintiff's contentions to the deputy commissioner, plaintiff references an injury that occurred subsequent to the deputy commissioner hearing on 31 May 2001 and which is the subject of I.C. File No. 143344. There is some notation in the medical records of an injury on that date. However, little evidence regarding this injury was presented at the hearing, defendants have not had the opportunity to challenge plaintiff's assertions, and neither party complained of the deputy commissioner's refusal to consider this claim; accordingly, the 31 May 2001 incident giving rise to of I.C. File No. 143344 is not addressed in this Opinion and Award. Upon review of the claim of injuries from the alleged 31 May 2000 incident, the parties and the Commission need to consider whether this is a claim for a new injury or a continuation, including a change of condition, from another compensable workers' compensation claim.
34. Although the parties stipulated that plaintiff's average weekly wage could be determined by a Form 22 Wage Statement no statement was filed with the deputy commissioner or the Full Commission in this case. The deputy commissioner awarded benefits in the amount of $515.14 per week based on the stipulation that total temporary disability benefits were made in this claim at this rate. Neither party appealed from the finding that the compensation rate is $515.14 per week; therefore, in the absence of contrary evidence, the Full Commission accepts this rate to be applicable to his claim.
35. Plaintiff voluntarily allowed her nursing license to lapse on 31 December 2000 and was not licensed by the N.C. Board of Nursing from 1 January 2001 until 29 June 2001, when plaintiff's nursing license was reinstated.
 ***********
Based upon the foregoing findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. [I.C. No. 958925] Plaintiff sustained a compensable injury to her back consisting of a T-12 compression fracture in the course and scope of her employment on 6 June 1999. N.C.G.S. § 97-2(6).
2. Plaintiff did not lose any compensable time from work for her 6 June 1999 injury, but she has a 5% impairment rating to the back for which plaintiff is entitled to receive fifteen (15) weeks of compensation at $515.14 per week. N.C.G.S. §§ 97-28, 97-29, 97-30, 97-31(23).
3. Plaintiff is entitled to receive reasonable and necessary medical care, subject to the limitations of Section 97-25.1, for her back injury consisting of a T-12 compression fracture sustained on 6 June 1999. N.C.G.S. §§ 97-2(19), 97-25.
4. [I.C. No. 042073] Plaintiff sustained a compensable injury to her back consisting of a thoracic and lumbar strain and aggravation of bulging disks in the course and scope of her employment on 27 December 1999. N.C.G.S. § 97-2(6).
5. Plaintiff was off from work for her 27 December 1999 injury at the direction from Dr. Miller from 2 March 1999 until she was released to return to work on 1 May 1999 for which she is entitled to receive total temporary disability benefits in the amount of $515.14 per week. N.C.G.S. § 97-29.
6. Plaintiff refused suitable employment on 1 May 1999, and at subsequent times, by resigning from employment with defendant-employer, refusing to request reasonable employment from defendant-employer, and by engaging in activity which led to her indictment on 20 April 1999 and subsequent conviction for seeking to obtain a controlled substance by false prescription. Plaintiff also failed to maintain her nursing license which disqualified her from accepting nursing positions that would have been available with defendant-employer or other potential employers. Said conduct precludes plaintiff's entitlement to indemnity benefits from 1 May 2000 to date of this Opinion. N.C.G.S. § 97-32;See Seagraves v. Austin Co, of Greensboro, 124 N.C. App. 228,472 S.E.2d 397 (1996); Franklin v. Broyhill Furniture Indus.,123 N.C. App. 200, 472 S.E.2d 382 (1996). The Commission has found that defendant-employer had suitable employment (regular and permanent positions) available for plaintiff which included nursing positions other than ward duty nursing for which plaintiff would have been eligible for employment save for her resignation, failure to report for employment, and her pending criminal indictment. Seagraves, supra.
7. On 30 June 2000, plaintiff received a compensable injury to her right leg when she fell at home. This injury is not a new workers' compensation claim and did not arise out of or in the course of her employment. N.C.G.S. § 97-2(6). This injury, however, is compensable under the 27 December 1999 injury as a change of condition which is a direct and natural result of her compensable injury. Starr v.Charlotte Paper Co., 8 N.C. App. 604, 175 S.E.2d 342, cert. denied,277 N.C. 112 (1970); N.C.G.S. § 97-2(6), see N.C.G.S. § 97-47. "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."English v. J.P. Stevens Co., 98 N.C. App. 466, 391 S.E.2d 499 (1990);Roper v. J.P. Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983),disc. review denied, 310 N.C. 309, 312 S.E.2d 352 (1984); Starr v.Charlotte Paper Co., 8 N.C. App. 604, 175 S.E.2d 342, cert. denied,277 N.C. 112 (1970). In this case, plaintiff's 30 June 2000 injury to her right leg is a natural consequence that flows from her compensable 27 December 1999 injury.
8. Plaintiff reached maximum medical improvement with a 2% impairment rating to the back for her compensable 27 December 1999 injury for which she is entitled to receive six (6) weeks of compensation at the rate of $515.14 per week pursuant to General Statute § 97-31(23). Plaintiff reached maximum medical improvement with a 0% impairment rating for the 30 June 2000 right leg injury that arose from the 27 December 1999 injury for which no benefits are owed pursuant to General Statute §§ 97-31
and 97-32.
9. Plaintiff is entitled to receive reasonable and necessary medical care, subject to the limitations of § 97-25.1, for her 27 December 1999 back injury consisting of a thoracic and lumbar sprain and an aggravation to bulging disks at L3-4, L4-5, and L5-S1 and for the 30 June 2000 injury to her right leg which arose from the compensable 27 December 1999 back injury. N.C.G.S. §§ 97-2(19), 97-25.
10. [I.C. No. 051886] Because plaintiff's claim for the 30 June 2000 injury to her right knee, as previously stated, is not a new injury that arose in the course and scope of employment, it should not have received an Industrial Commission file number for a new claim. Therefore, I.C. No. 051886 is hereby closed and this injury is consolidated in I.C. No. 042073 for the 27 December 1999 injury.
11. [I.C. No. 103438] Plaintiff's claim for an injury that occurred on 21 October 2000 is not compensable because it did not arise out of or in the course of employment with defendant-employer and is not a natural consequence of another compensable injury. N.C.G.S. § 97-2(6).
12. [I.C. No. 109386] Plaintiff's claim for injuries sustained in an automobile accident on 8 January 2001 is not compensable because her injuries did not arise out of or in the course of employment with defendant-employer and is not a natural consequence of another compensable injury. N.C.G.S. § 97-2(6). First, plaintiff was not in the employ of defendant-employer on 8 January 2001, having previously resigned from her employment. Second, the risk of injury while traveling to mediation is not equivalent to an injury that arises from medical treatment, was not sustained in the course of medical treatment, and under the facts of this case the accident did not otherwise result from a compensable injury. The Full Commission finds that if travel to mediation was held to be an activity in the course and scope of employment, and thereby compensable, it would be possible for an employee with a non-compensable claim to then create a compensable claim while in course to the mediation, deputy commissioner hearing, or other legal proceeding. The Commission has not found a case in any jurisdiction, which holds that an injury during travel to a legal proceeding is compensable and finds that such an injury is not contemplated by the Act to be in the course and scope of employment. Third, the risks of travel on the highways is a risk to which the general public is exposed and is not peculiar to plaintiff's employment or her workers' compensation claim. Plaintiff's injuries from the 8 January 2001 single vehicle accident did not arise out of and in the course of employment and did not come from a risk incidental to employment, but arise from a risk to which everyone may be subjected. N.C.G.S. § 97-2(6); Roman v. SouthlandTransp. Co., 350 N.C. 549, 515 S.E.2d 214 (1999); Cole v. GuilfordCounty, 259 N.C. 724, 131 S.E.2d 308 (1963). This claim, therefore, is denied.
13. Plaintiff is not entitled to change treating physicians to T. Craig Derian, M.D. N.C.G.S. § 97-25. In addition, plaintiff has not presented sufficient credible and competent evidence that she needs, or that it is medically reasonable, to have spinal surgery for her compensable back injuries. To the contrary, given plaintiff's osteoporitic condition, spinal fusion surgery appears to be contraindicated. See North Carolina Chiropractic Association v. AetnaCas. Sur. Co., 89 N.C. App. 1, 365 S.E.2d 312 (1988) (issue of appropriate treatment is within exclusive jurisdiction of Industrial Commission). Given Dr. Derian's contrary interpretation of radiology studies, failure to complete a full review of plaintiff's medical records that were in his possession, failure to appreciate the status of plaintiff's pre-existing osteoporitic condition, and the distance from plaintiff's residence to Dr. Derian's office, the Full Commission declines to authorize Dr. Derian as a treating physician in this case. Plaintiff's treatment for her compensable injuries shall continue under the care of Dr. Miller, Dr. Reeg, and their referral, and shall include a pain clinic or other pain treatment program recommended by Dr. Reeg and/or Dr. Miller, or their referral.
14. [I.C. No. 143344] I.C. File No. 143344 is not currently before the Full Commission and is not addressed in this Opinion and Award. Upon review of the claim of injuries from the alleged 31 May 2000 incident made the basis of I.C. File No. 143344, the parties and the Commission need to consider whether this is a claim for a new injury or a natural continuation, including a change of condition, from another compensable workers' compensation claim.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $515.14 per week for the period of 27 April 2000 through 1 May 2000 for plaintiff's 27 December 1999 injury. These sums have accrued and shall be paid in a lump sum, if not already paid, subject to attorney's fees awarded below.
2. Defendants shall pay 15 weeks of compensation at the rate of $515.14 per week for the 5% impairment rating to the back for plaintiff's 6 June 1999 injury. These sums have accrued and shall be paid in a lump sum, if not already paid, subject to attorney's fees awarded below.
3. Defendants shall pay 6 weeks of compensation at the rate of $515.14 per week for the 2% impairment rating to the back for plaintiff's 27 December 1999 injury. These sums have accrued and shall be paid in a lump sum, if not already paid, subject to attorney's fees awarded below.
4. Plaintiff is entitled to receive and defendants are required to pay for reasonable medical care, including prescription and travel expenses, for treatment of plaintiff's 6 June 1999 T-12 compression fracture, for treatment of plaintiff's 27 December 1999 thoracic and lumbar strain and aggravation to bulging L3-4, L4-5, and L5-S1 disks, and for treatment of plaintiff's right knee injury sustained on 30 June 2000 which is a direct and natural consequence of her 27 December 1999 injury. Defendants are not required to pay for spinal surgery or other future treatment offered by Dr. Derian. Plaintiff's medical care for the compensable injuries shall be performed by Dr. Miller, Dr. Reeg, and their referral.
5. Plaintiff's claims for injuries on 21 October 2000 and 8 January 2001 are denied.
6. Plaintiff's attorney is entitled to receive 25% of the sums awarded in paragraphs 1, 2, and 3, which have not been previously paid by defendants. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff. In the event that weekly compensation benefits are resumed for plaintiff in the future for this claim, her attorney shall be entitled to receive every fourth check.
7. Defendants shall pay all costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
RCR/gas